# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**SHAYLEE TREMPER,**

     **Plaintiff,**

    **v.**                                    **Case No. 22-CV-98-SCD**

**KILOLO KIJAKAZI,**
  *Acting Commissioner of the Social Security Administration,*

    **Defendant.**

---

## DECISION AND ORDER

---

      Shaylee Tremper applied for social security disability benefits based primarily on daily, widespread joint pain. The Commissioner of the Social Security Administration denied the application, and, after a hearing, an administrative law judge found Tremper not disabled under the Social Security Act. Tremper seeks judicial review of that decision, arguing that the ALJ erred in assessing the intensity and persistence of her alleged symptoms and in evaluating certain opinion evidence. Because the ALJ did not reversibly err, and because substantial evidence otherwise supports the ALJ's decision, I will affirm the denial of disability benefits.

## BACKGROUND

      In 2019, Tremper applied for supplemental security income under Title XVI of the Social Security Act, claiming that she became disabled and unable to work in 2018 due to several physical and mental impairments.

## I. Medical Background

Tremper has experienced lifelong physical and mental health issues. R. 324–25.[1] Since childhood, she has suffered from daily abdominal pain and nausea that's especially bad in the mornings. She has also suffered from skin flushing; a weakened immune system; and chronic pain in her knees, hips, and ankles. Around age ten, Tremper began taking medication for severe anxiety. She had thyroid surgery a few years later. When Tremper was fifteen years old, her rheumatologist, Kent Partain, diagnosed her with fibromyalgia, patellofemoral pain syndrome, and connective tissue disease. She complained about increased pain in her knees, neck, thumbs, and fingers to her primary care physician assistant, Brooke Birling, the following year. R. 859. Treatment notes from that visit indicate that Dr. Partain told Tremper she had laxity (i.e., excessive flexibility or hypermobility) in her knees. But Tremper said she'd never had that issue before, and she didn't exhibit any laxity during her physical examination with Ms. Birling. R. 859–60.

Tremper continued to experience chronic joint pain throughout 2019. Treatment notes from a January 2019 visit describe tenderness in her spine and hypermobility in her elbows, fingers, and knees. R. 515–22. Dr. Partain assessed hypermobility syndrome and referred Tremper to a geneticist for possible Ehlers-Danlos syndrome (EDS)—an inherited connective tissue disorder characterized by joint hypermobility, chronic pain, autonomic dysfunction (a.k.a. dysautonomia), orthostatic intolerance (i.e., lightheadedness and increased heart rate when standing up), abnormal skin findings (such as soft skin and unusual stretch marks), and easy fatigue. R. 308. Tremper told the geneticist she had a history of lightheadedness, skin flushing, widespread joint pain, and dislocations of her right ankle and right wrist. R. 304–

---

[1] The transcript is filed on the docket at ECF No. 11-2 to 11-21.

09. However, upon examination, Tremper did not have skin, facial, or other features to suggest a hereditary connective tissue disorder, and she did not have generalized joint hypermobility. The geneticist recommended symptomatic treatment, including medication, physical therapy, and an orthopedic evaluation.

Although unconfirmed by the geneticist, treatment providers continued to suspect a hypermobility disorder. An MRI from July 2019 revealed borderline hyperextension in Tremper's right knee, possibly related to EDS. R. 392. In August 2019, Tremper complained about bilateral knee and joint pain. R. 370–75. Treatment notes from that visit indicate that Tremper was in fact diagnosed with EDS. The physical exam revealed mild tenderness but adequate range of motion, adequate strength, and no instability in her knees. Tremper reported ongoing knee pain at her follow-up visit in September 2019. R. 362–67. Her provider assessed bilateral patellofemoral pain syndrome and indicated that fibromyalgia and EDS also were contributing to Tremper's knee pain.

In October 2019, Tremper began seeing Linda Bluestein, a specialist in hypermobility disorders and pain management. R. 324–337. She reported nausea, joint and muscle pain, anxiety, skin flushing, and temperature sensitivity. On exam, Tremper appeared somewhat tired, had prominent skin flushing, and exhibited marked hypermobility in her ankles, wrists, fingers, and toes. She was also alert, oriented, communicated effectively, did not display any pain behaviors, ambulated without difficulty, did not use an assistive device, was not in any apparent distress, had intact cranial nerves, did not reveal any apparent scoliosis, and had normal spinal range of motion. Dr. Bluestein assessed (among other things) hypermobile EDS, severe central sensitization, dysautonomia, and chronic pain. She recommended symptom management, including medication, supplements, and lifestyle changes. At a

3

follow-up appointment in November 2019, Tremper reported that she was doing better overall. R. 428–33. She had fewer headaches, she was feeling less anxious, her energy had improved somewhat, she drove recently, she was attending physical therapy every other week, and she was performing home exercises five to six times a week. The physical exam revealed floating ribs and slight bilateral ankle swelling but no other abnormal findings.

During a physical therapy session in early December 2019, Tremper reported that she partially dislocated a rib while doing her exercises. R. 634–35. She said a doctor confirmed the rib dislocation, but the record does not contain any corroborating treatment notes. She also said the pain subsided with medication, though she remained sore at physical therapy the following week.

Later that month, Tremper began seeing a new rheumatologist, Eric Gowing. R. 763–67. She complained about daily pain in her ribs, low back, hips, and knees. On exam, Tremper exhibited mild hypermobility of some finger joints; some hypermobility of both wrists; some tenderness in her wrists, back, hips, and rib area; and hypermobility of both hips. Despite those findings, Dr. Gowing determined that Tremper did not meet the diagnostic criteria for EDS. He assessed generalized benign joint hypermobility and recommended low-impact exercise, dieting, and relaxation techniques. At a follow-up appointment in March 2020, Tremper complained about ongoing pain, anxiety, and lightheadedness. R. 751–55. She also reported difficulty dressing, getting out of bed, washing her entire body, getting out of a car, walking two miles, and participating in recreational activities. The physical exam revealed tenderness in her right knee and tender points in her wrists and back, but Tremper did not appear distressed.

4

Tremper's health issues persisted in 2020. She continued to complain about morning nausea, widespread joint pain, and feeling lightheaded when rising to stand. R. 344, 652, 709, 741, 748–49, 754, 1004. But she demonstrated few abnormal findings during physical exams. R. 345, 741–42, 749–50, 754. During a visit with Dr. Bluestein in February 2020, Tremper reported that her physical therapist thought her ribs were dislocating, and Tremper indicated she felt an occasional clicking sensation in that area. In April 2020, Dr. Bluestein prescribed Tremper ketamine because she complained about increased fatigue and joint pain after having her wisdom teeth removed. R. 652–57. A few months later, Tremper told Ms. Birling that ketamine was "very helpful" in reducing her pain. R. 748. She said the same thing to Dr. Bluestein in October 2020, indicating that ketamine reduced her pain to a one or two out of ten. R. 1004.

In November 2020, Tremper saw Jesse Frey for a mental status evaluation in connection with her disability application. R. 709–13. She told Dr. Frey that her lifelong health issues had worsened in the last five years. She reported difficulty standing or sitting for long periods due to joint pain, suffering from chronic fatigue, and struggling to keep up with school. Tremper said her average day involved stretching, going to school and physical therapy, spending time with her boyfriend, and exercising. She also cooked, cleaned, shopped, did laundry, and drove. But she explained she couldn't drive more than twenty minutes due to her pain.

The following month, Tremper underwent a neuropsychological assessment with John Oestreicher. R. 716–19. Tremper had been referred to Dr. Oestreicher by her primary care provider to assist with diagnostic clarification regarding her mental health issues. After interviewing Tremper and administering a series of mental status tests, Dr. Oestreicher

5

assessed schizoaffective disorder (depressive type), anxiety disorder, and autism spectrum disorder.

In May 2021, Ms. Birling completed a medical source statement in support of Tremper's disability application. R. 1018–22. She indicated that she had seen Tremper at least once every six months since 2016. She noted Tremper's various diagnoses, described Tremper's symptoms (including pain), and identified the clinical findings and objective signs. As for functional capacity, Ms. Birling opined that Tremper could walk three or four blocks without needing to rest or experiencing severe pain, could sit one hour at a time, could stand fifteen minutes at a time, could stand or walk less than two hours in an eight-hour workday, and could sit for about two hours in a workday. She also opined that Tremper needed to walk for five minutes every hour; would require about four unscheduled breaks each workday; could rarely lift more than ten pounds; could rarely twist, stoop, crouch, climb stairs, or climb ladders; and had significant limitations handling, fingering, and reaching. Finally, Ms. Birling opined that Tremper would be off task twenty-five percent or more of each workday, could tolerate low-stress work, and would miss more than four days of work each month due to her impairments.

## II.    Procedural Background

Tremper applied for disability benefits in December 2019. *See* R. 13, 206–16, 231–42. She alleged disability beginning in May 2018 due to a host of medical issues: EDS, anxiety, fibromyalgia, mast cell activation syndrome, Asperger's or autism spectrum, thyroid issues, migraines, and constant nausea. Tremper asserted that her impairments significantly affected her ability to lift, squat, bend, stand, reach, walk, kneel, climb stairs, see, complete tasks, concentrate, use her hands, and get along with others. *See* R. 243–252.

6

Tremper also asserted significant limitations in her daily activities. She reported that her EDS caused severe pain that made it difficult for her to leave the house and that it was hard to do anything given her constant nausea. Specifically, Tremper said she had a hard time with personal care, she prepared only simple meals, she did light cleaning and laundry but couldn't vacuum or do yard work, and she wasn't able to drive long distances. She stated she enjoyed watching TV, playing videogames, and doing color therapy, though she could no longer hike or skateboard. She did, however, spend time with friends a few times a week. Tremper estimated that she could sit for three hours at a time and six hours a day; stand twenty minutes at a time and one hour a day; and walk fifteen minutes at a time and forty-five minutes a day. She indicated that she did not have any lifting restrictions.

The state agency charged with reviewing the application on behalf of the Social Security Administration denied Tremper's claim initially and upon her request for reconsideration. *See* R. 67–109. The medical consultants who reviewed Tremper's records found that she had severe but not disabling fibromyalgia, anxiety, and depression. R. 75–76, 95–97. Reviewing physician William Fowler found that Tremper could perform light exertional work, but she couldn't climb ladders, ropes, or scaffolds, and she should avoid concentrated exposure to humidity and workplace hazards like machinery and heights. R. 77–79, 82. Suzanne Kersbergen, the reviewing physician at the reconsideration level, agreed but added that Tremper should also avoid concentrated exposure to noise. R. 98–101, 106–07.

After the state-agency denial, an ALJ employed by the Social Security Administration held an evidentiary hearing on Tremper's application. *See* R. 36–66. Tremper's representative indicated that EDS, dysautonomia, schizoaffective disorder, and personality disorder were Tremper's main health concerns. R. 42. He explained that Tremper was two years behind in

7

school due to her health issues and that she had a case manager to help keep track of her various medical visits and treatments. R. 43. The representative said that mass cell activation syndrome was part and parcel of Tremper's EDS, agreed that EDS accounted for Tremper's fibromyalgia symptoms, and suggested that Dr. Bluestein was the preeminent EDS treatment provider in the state. R. 45–47.

Tremper testified at the hearing. *See* R. 50–59. She told the ALJ that she switched to homeschool after ninth grade because her health problems caused her to miss so much time in school. R. 51–52. She never graduated, but she was working on her GED. Tremper indicated that she last worked part time at a chiropractor office doing reception-type work. R. 50–51. She said she was let go because her health issues frequently prevented her from showing up to work. At the time of the hearing, she was living with her parents. R. 52.

Tremper described her daily activities. R. 53–56. She told the ALJ that she helped take care of the family dog, she did schoolwork a few hours a week, she cleaned her room, and she did some laundry. However, she couldn't vacuum due to shoulder dislocations, and she needed to take frequent breaks while cleaning because her knees would lock up and start to hurt. Tremper also said that she didn't sleep well; she often woke up with nausea, fatigue, and pain; and she needed help brushing her hair.

Tremper testified briefly about her impairments. R. 55–57. She told the ALJ that she dislocated her hip last week. She said she didn't see a doctor for the hip dislocation; she "pretty much deal[t] with it until [she had] physical therapy," which she had attended every week for the past two years. R. 56. Tremper indicated that she had not been hospitalized over the last couple years, but she did have her wisdom teeth and part of her thyroid removed.

Case 1:22-cv-00098-SCD   Filed 03/01/23   Page 8 of 24   Document 22

A vocational expert also testified at the hearing. *See* R. 59–65. The vocational expert testified that a hypothetical person with Tremper's vocational profile (i.e., eighteen years old on her application date, a limited education, and no past relevant work) could work as a marker, a mail clerk, and an office helper if she was limited to a restricted range of light work. R. 60–61. According to the vocational expert, no jobs would be available if the person was absent from work more than one day a month, required unscheduled breaks throughout the workday, was off task more than ten percent of the day, or could use her upper extremities only occasionally (that is, a third of the day or less). R. 63–65.

In June 2021, the ALJ issued a written decision finding that Tremper was not disabled. *See* R. 10–35. The ALJ considered the disability application under 20 C.F.R. § 416.920(a)(4), which sets forth a five-step process for evaluating SSI claims. At step one, the ALJ determined that Tremper had not engaged in substantial gainful activity since the date she applied for benefits (December 26, 2019). R. 15. The ALJ determined at step two that Tremper had six severe impairments: patellofemoral pain syndrome and osteoarthritis of the bilateral knees; hypermobile EDS; fibromyalgia; anxiety disorder; depressive disorder; and schizoaffective disorder. R. 15–18. At step three, the ALJ determined that Tremper did not have an impairment, or a combination of impairments, that met or medically equaled the severity of a presumptively disabling impairment listed in the social security regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1 (i.e., "the listings"). R. 18–21.

The ALJ next assessed Tremper's residual functional capacity—that is, her maximum capabilities despite her limitations, *see* 20 C.F.R. § 416.945(a). The ALJ determined that Tremper could work at the light exertional level with several non-exertional limitations. R. 21. With respect to physical abilities, the ALJ concluded that Tremper couldn't climb ladders,

9

ropes, and scaffolds and should avoid concentrated exposure to humidity, pulmonary irritants, and workplace hazards.

In assessing that RFC, the ALJ considered Tremper's subjective allegations about her impairments, the medical evidence, the prior administrative medical findings, and the medical opinion evidence. *See* R. 21–30. The ALJ determined that the record did not support Tremper's allegations regarding the intensity, persistence, and limiting effects of her impairments. R. 22, 24–25, 29. According to the ALJ, Tremper maintained significant physical and mental functional capacity with only conservative treatment, including prescribed medications, physical therapy, and counseling. R. 24. The ALJ noted that Tremper's treatments controlled, reduced, or eliminated her symptoms. The ALJ also concluded that the medical records revealed generally good objective findings during Tremper's medical exams. R. 24–25. Finally, the ALJ noted that Tremper was able to engage in a wide range of daily activities during the relevant period. R. 25.

The ALJ also addressed the opinion evidence in the record. *See* R. 25–29. Relevant here, the ALJ found persuasive the findings of the reviewing state-agency physicians, and the assessed RFC largely tracked their findings. *See* R. 21, 25–26. The ALJ also considered the medical source statement authored by Ms. Birling, Tremper's primary care physician assistant. R. 29. According to the ALJ, Ms. Birling's opined functional limitations were too restrictive and inconsistent with and unsupported by the overall record. The ALJ determined that the objective medical evidence generally reflected that Tremper had significant functional capacity. He mentioned several examples, including intact cranial nerves, normal deep tendon reflexes, and 5/5 strength in all extremities. R. 29 (citing Exhibit 23F/31).

The ALJ also determined that Tremper retained the ability to perform a variety of daily activities. He recounted Tremper's report during her mental status evaluation with Dr. Frey that her daily activities consisted of stretching, going to school, participating in physical therapy, spending time with her boyfriend, exercising, cooking, cleaning, shopping, doing laundry, driving, and managing her personal finances. Those reported activities, according to the ALJ, were consistent with the level of activity Tremper asserted in her function report. R. 29 (citing Exhibits 19F; 4E). Also, the ALJ mentioned a December 2020 visit with Ms. Birling, wherein Tremper reported that she was taking online classes to obtain a veterinary technician certification and working twenty-five hours a week at the Dollar Store. R. 29 (citing Exhibit 23F/5).

The ALJ then continued with the sequential evaluation process. At step four, the ALJ determined that Tremper did not have any past relevant work. R. 30. The ALJ determined at step five that there were jobs that existed in significant numbers in the national economy that Tremper could perform. R. 30–31. Based on that finding, the ALJ determined that Tremper had not been disabled since she applied for benefits. R. 31.

The Appeals Council denied Tremper's request for review, *see* R. 1–6, making the ALJ's decision a final decision of the Commissioner of the Social Security Administration, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

In January 2022, Tremper filed this action seeking judicial review of the Commissioner's decision denying her claim for disability benefits under the Social Security Act, 42 U.S.C. § 405(g). *See* ECF No. 1. The matter was reassigned to me after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 4, 6, 7. Tremper filed a brief in support of her disability claim, ECF No. 15;

Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, filed a brief in support of the ALJ's decision, ECF No. 20; and Tremper filed a reply brief, ECF No. 21.

## APPLICABLE LEGAL STANDARDS

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing. A reviewing court will reverse the Commissioner's decision "only if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

"Substantial evidence is not a demanding requirement. It means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Martin*, 950 F.3d at 373 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). "When reviewing the record, this court may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, I must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

**DISCUSSION**

The ALJ determined that Tremper was not disabled because she could perform a significant number of jobs at the light exertional level that did not require climbing ladders, ropes, and scaffolds and that did not involve more than concentrated exposure to humidity, pulmonary irritants, and workplace hazards. Tremper contends the assessed RFC does not adequately account for her EDS-induced pain, hypermobility, and joint dislocations. Specifically, she maintains the ALJ erred in assessing the intensity, persistence, and limiting effects of her alleged EDS symptoms and in evaluating certain opinion evidence.

**I.     The ALJ's Assessment of Tremper's Alleged Symptoms Was Not Patently Wrong**

ALJs use a two-step process for evaluating a claimant's impairment-related symptoms. *See* Social Security Ruling 16-3p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029, 2016 SSR LEXIS 4, at *3 (Mar. 16, 2016) (citing 20 C.F.R. § 416.929). First, the ALJ must "determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms." *Id.* at *5. Second, the ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit . . . her ability to perform work-related activities." *Id.* at *9. At the second step, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *9–10. When reviewing evidence other than objective medical evidence, the ALJ may consider several factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the

13

claimant's symptoms; factors that precipitate and aggravate the claimant's symptoms; the type, dosage, effectiveness, and side effects of the claimant's medications; other treatment the claimant has received for symptom relief; and any other measures the claimant has used to relieve her symptoms. *Id.* at *18–19; *see also* 20 C.F.R. § 416.929(c)(3).

Reviewing courts "will overturn an ALJ's decision to discredit a claimant's alleged symptoms only if the decision is 'patently wrong,' meaning it lacks explanation or support." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (quoting *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)). "A credibility determination lacks support when it relies on inferences that are not logically based on specific findings and evidence." *Cullinan*, 878 F.3d at 603 (citing *Murphy*, 759 F.3d at 816). "In drawing its conclusions, the ALJ must 'explain her decision in such a way that allows [a reviewing court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy*, 759 F.3d at 816 (quoting *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011)).

Tremper alleged that her EDS caused daily joint pain and recurrent joint dislocations that significantly affected her ability to sit, stand, walk, and perform daily activities like vacuuming, cleaning, and driving. The ALJ determined that Tremper's impairments could reasonably be expected to cause her alleged symptoms. However, according to the ALJ, Tremper's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the record. As support, the ALJ observed that Tremper had received only conservative care and that her treatments had controlled, reduced, or eliminated her symptoms. The ALJ also observed that the physical exam findings generally were normal. Finally, the ALJ observed that Tremper's allegedly disabling limitations were

inconsistent with the level of activity she reported to Ms. Birling, to Dr. Frey, and in her function report. Tremper challenges each of the three reasons offered by the ALJ.

## A.     Treatment

Tremper argues that the ALJ erred in relying on her alleged improvement with medication. According to Tremper, medication was helpful, but it did not eradicate her pain. The ALJ, however, never said that medication completely resolved Tremper's symptoms. Rather, the ALJ noted that medication helped control or reduce Tremper's pain. *See* R. 24–25. Substantial evidence supports that finding. *See* R. 748 (Tremper reporting that ketamine was "very helpful for her"), 1004 (Tremper reporting that ketamine "[r]eally helps with pain"), 1010 (Tremper reporting that "ketamine helps a lot with pain and mood"). Thus, the ALJ reasonably considered Tremper's treatment when assessing the intensity, persistence, and limiting effects of her alleged symptoms. *See* 20 C.F.R. § 416.929(c)(3) (permitting ALJs to consider "what medications, treatments or other methods [claimants] use to alleviate" their pain and other symptoms).

## B.     Objective medical evidence

Tremper also takes issue with the ALJ's reliance on the objective medical evidence. She accuses the ALJ of citing normal exam findings that she says are unrelated to EDS. Similarly, Tremper criticizes the ALJ for relying too heavily on the lack of objective evidence to support her alleged symptoms. She likens EDS to fibromyalgia, an impairment that results in symptoms—most prominently widespread pain—that are not easily verified via objective testing. Tremper also criticizes the ALJ for ignoring objective evidence consistent with her allegations.

The ALJ reasonably considered the objective medical evidence when assessing the intensity, persistence, and limiting effects of Tremper's alleged symptoms. *See* 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."). *First*, the fact that the ALJ cited several objective findings that do not appear related Tremper's EDS does not mean he failed to build a logical bridge between the evidence and his subject-symptom evaluation. In addition to EDS, Tremper also suffered from patellofemoral pain syndrome and osteoarthritis in both knees. Tremper's ability to ambulate without difficulty and without the use of an assistance device, normal movement in all extremities, and normal motor strength and tone clearly were relevant to those conditions. Similarly, that Tremper had intact cranial nerves and normal deep tendon reflexes was relevant to whether there was a neurological component to her alleged symptoms. This was not just an EDS case; consistent with social security regulations and rulings, the ALJ considered the limiting effects of all Tremper's impairments.

*Second*, Tremper fails to support her belief that several of the objective findings the ALJ cited were unrelated to her EDS-caused symptoms. She says that ambulation, range of motion in the cervical spine, and normal strength do not bear any relationship to EDS. But, as Tremper acknowledges, chronic joint pain is the "cardinal manifestation of Hypermobility EDS." ECF No. 21 at 5 (quoting *Austin v. Colvin*, No. 13 C 7257, 2014 WL 6807841, 2014 U.S. Dist. LEXIS 166547, at *11 (N.D. Ill. Dec. 2, 2014)). Tremper's performance on ability-related tests therefore arguably was relevant to her claim of debilitating pain. *See, e.g.*, *Madrigal v. Saul*, No. 19-C-1349, 2020 WL 2064087, 2020 U.S. Dist. LEXIS 75061, at *12–14 (E.D. Wis. Apr. 29, 2020) (rejecting a similar argument in a fibromyalgia case). So too was the fact

16

that Tremper repeatedly presented in no apparent distress, *see* R. 16–20, 22–26, 28 (all citing Exhibit 3F/22), and did not exhibit any pain behaviors during physical exams where she complained about joint pain, *see, e.g.*, R. 331. Tremper has not shown that objective findings are *never* relevant in evaluating the severity of EDS-related symptoms, and several of the findings cited by the ALJ appear inconsistent with complaints of debilitating joint pain.

*Third*, the ALJ did not impermissibly minimize the effects of EDS due to a lack of supporting objective evidence. Unlike in *Coffee v. Berryhill*, No. 3:17-CV-852-PPS/MGG, 2019 WL 302680, 2019 U.S. Dist. LEXIS 10383, at *4–7 (N.D. Ind. Jan. 22, 2019)—a case cited by Tremper in her reply brief—the ALJ here did not discredit Tremper's statements concerning her subjective EDS symptoms because they could not be "objectively verified." Rather, the ALJ in this case cited Tremper's generally normal physical exam findings as one of several reasons for not fully believing her subjective allegations.[2]

*Finally*, Tremper has not pointed to significant objective findings the ALJ ignored. She says the ALJ failed to note that EDS caused pain and that pain was consistent with the condition. But the ALJ discussed Tremper's alleged pain repeatedly in his decision, *see* R. 22–24, and determined that Tremper's medically determinable impairments—including EDS—could reasonably be expected to produce that symptom, *see* R. 21–22. Tremper says the ALJ also failed to address Dr. Bluestein's findings of laxity, tachycardia (i.e., rapid heartbeat), skin flushing, and urinary tract infections. The ALJ, however, does not need to "provide a complete written evaluation of every piece of . . . evidence" in the record. *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015) (quoting *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012)).

---

[2] Tremper never addresses a significant piece of objective evidence that was lacking—corroboration of her alleged recurrent joint dislocations. *See* R. 304, 344, 634–35, 770.

Moreover, the ALJ did not ignore an entire line of evidence contrary to his conclusion. Although the ALJ did not explicitly discuss Dr. Bluestein's finding of marked hypermobility in her ankles, wrists, fingers, and toes, *see* R. 332, he did acknowledge similar findings made by Tremper's rheumatologist, Dr. Gowing, *see* R. 22 (citing Exhibit 23F/31). Tremper fails to explain how Dr. Bluestein's other findings undermined the ALJ's evaluation of her alleged symptoms or resulted in additional functional limitations not included in the RFC assessment. She cites several other findings the ALJ supposedly missed, but those records merely reflect her providers recording her subjective complaints. *See* ECF No. 15 at 8 (citing R. 835), 8–9 (citing R. 463), 9 (citing R. 645), 14 (citing R. 787), 14–15 (citing R. 766), 15 (citing R. 637, 1005).

### C.    Activities of daily living

Finally, the ALJ reasonably considered Tremper's daily activities when assessing the intensity, persistence, and limiting effects of her alleged symptoms. *See* 20 C.F.R. § 416.929(c)(3)(i) (explicitly permitting ALJs to consider the claimant's daily activities). Tremper implies that the ALJ impermissibly equated her activities of daily living with the ability to sustain full-time, competitive employment. I disagree. The ALJ never said that Tremper's reported activities showed she could work. Rather, the ALJ determined that Tremper's activities of daily living were inconsistent with her allegedly disabling symptoms. *See* R. 25.

Tremper also says that Dr. Frey's references to her activities of daily living "were not a reflection of her physical abilities or lack thereof to perform them." ECF No. 15 at 15. The only specific activity she mentions is driving, and Tremper did tell Dr. Frey her pain made it hard to drive more than twenty minutes. *See* R. 712. However, that isolated error is harmless.

18

The ALJ acknowledged that Tremper alleged significant limitations in her daily activities. *See* R. 21–22 (citing Exhibits 3E; 4E; 19F; 20F; Hearing Testimony). And he listed a number of activities aside from driving—including performing her daily exercises, working twenty-five hours a week, taking online courses, stretching, spending time with her boyfriend, cooking, cleaning, shopping, doing laundry, and managing her personal finances—that reflected greater functional capabilities than Tremper alleged, *see* R. 25 (citing Exhibits 19F; 4E).

\*     \*     \*

In sum, the ALJ's decision to discredit Tremper's allegedly disabling symptoms was not patently wrong. The ALJ did not reject Tremper's alleged symptoms based solely on the normal objective medical findings. Rather, in compliance with SSR 16-3p and 20 C.F.R. § 416.929, the ALJ explained that Tremper's symptoms—including EDS-induced pain—were also inconsistent with her course of treatment, improvement with medication, and reported activities. Substantial evidence supports that finding, and Tremper has not presented any compelling contradictory evidence the ALJ failed to consider.

## II.     The ALJ Did Not Reversibly Err in Evaluating the Opinion Evidence

Because Tremper applied for disability benefits on or after March 27, 2017, the ALJ applied the new social security regulations for evaluating medical opinions and prior administrative medical findings. *See* R. 21 (citing 20 C.F.R. § 416.920c). Under the new regulations, the ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.920c(a). Instead, the ALJ must consider the persuasiveness of all medical opinions and prior administrative medical findings in the record using five factors: supportability, consistency, relationship with the claimant, specialization, and other factors

19

that tend to support or contradict a medical opinion or prior administrative medical finding. *See* 20 C.F.R. § 416.920c(c).

Although an ALJ may consider all five factors, "the most important factors" are supportability and consistency. 20 C.F.R. § 416.920c(a), (b)(2). The supportability factor focuses on what the source brought forth to support his or her findings. 20 C.F.R. § 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."). The consistency factor, on the other hand, compares the source's findings to evidence from other sources. 20 C.F.R. § 416.920c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). The ALJ must explain in his decision how he considered the supportability and consistency factors for each medical opinion and prior administrative medical finding in the record. § 416.920c(b)(2). The ALJ may, but doesn't need to, explain how he considered the other three factors. *Id.*

Tremper argues that the ALJ erred in evaluating the medical opinions of Ms. Birling, her primary care physician assistant, and the prior administrative medical findings of the reviewing state-agency physicians.

### A.    Ms. Birling

Ms. Birling completed a medical source statement indicating that Tremper has significant functional limitations stemming from a variety of impairments, including EDS.

The ALJ determined that Ms. Birling's opinions were unsupported by and inconsistent with the overall record. As support, the ALJ cited Tremper's normal exam findings, including during a visit with Ms. Birling in November 2019. The ALJ also cited the activities Tremper reported to Dr. Frey, in her function report, and to Ms. Birling in December 2020.

Tremper accuses the ALJ of not building a logical bridge between the evidence and his decision not to adopt any of Ms. Birling's opined limitations. She repeats many of the same arguments she makes with respect to the subjective-symptom evaluation. First, Tremper says the ALJ failed to explain how the objective findings he cited related to EDS. But EDS wasn't the only impairment Ms. Birling treated. Ms. Birling was Tremper's primary care provider, and she listed several diagnoses on her medical source statement: anxiety, dermatographia urticaria, EDS, fibromyalgia, hypermobility, palpitations, vitamin D deficiency, and depression. R. 1018. Thus, it's unsurprising that some of the cited objective findings do not relate to EDS. However, as explained above, other findings do appear relevant to Tremper's joint pain—her primary EDS symptom.

Second, Tremper says the ALJ failed to evaluate Ms. Birling's opinions in light of Dr. Bluestein's findings. It's true that the ALJ did not explicitly discuss Dr. Bluestein's findings while evaluating Ms. Birling's medical source statement. But he didn't have to. The ALJ discussed Dr. Bluestein's findings throughout his decision; he did not need to repeat that evidence when evaluating the medical opinions. *See Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021) ("An ALJ need not rehash every detail each time he states conclusions on various subjects."). The ALJ also clearly acknowledged that Tremper exhibited joint laxity during her physical exams. *See* R. 23 (citing Exhibit 23F/31). And Tremper has failed to explain how Dr.

Bluestein's other findings—e.g., tachycardia, skin flushing, fatigue, and difficulty balancing—compelled the ALJ to adopt Dr. Birling's significant opined limitations.

Finally, Tremper says the ALJ erred in relying on her activities of daily living. But substantial evidence supports the ALJ's finding that Tremper's reported activities were inconsistent with Ms. Birling's opined limitations. The only activity the ALJ overstated was driving; however, that error was harmless, for the reasons explained above.

### B. The reviewing state-agency physicians

The reviewing state-agency physicians found Tremper capable of light work with additional postural and environmental restrictions. The ALJ determined those findings were consistent with and supported by the other evidence in the record. The assessed RFC largely tracked the reviewing physicians' findings.

Tremper says the ALJ's reliance on the reviewing physicians' findings was misplaced because they did not find EDS to be a severe impairment. But the reviewing physicians did consider the EDS diagnosis and the supporting records. For example, they discussed the May 2019 visit with the geneticist where Tremper exhibited no joint hypermobility; the October 2019 visit with Dr. Bluestein, who noted marked hypermobility in several areas; and the December 2019 visit with Dr. Gowing where Tremper exhibited tenderness and joint hypermobility. *See* R. 72–75. Thus, although the reviewing physicians did not find EDS to be a severe impairment, they did consider how the condition's symptoms—hypermobility and joint pain—limited Tremper functionally.

Moreover, Tremper has not identified any evidence not considered by the reviewing physicians that undermined their findings. The reviewing physicians made their findings in April 2020 and November 2020, respectively. The only evidence Tremper cites post-dating

22

those assessments is a visit with Ms. Birling in December 2020 where Tremper was assessed with anxiety disorder, EDS, and fibromyalgia. ECF No. 15 at 4 (citing R. 742–43). Tremper has not explained how that evidence merited additional review; simply labeling the prior administrative medical findings "outdated" does not make them so. Also, the ALJ explicitly said in his decision that he considered the reviewing physicians' findings in light of all the evidence, "including the evidence received after [they] completed their reviews." R. 26. And Tremper has not presented any evidence to contradict that finding.

* * *

In sum, the ALJ did not reversibly err in evaluating the opinion evidence in the record. Tremper concedes that Ms. Birling's medical source statement was the only opinion in the record that provided limitations for her EDS. The ALJ, however, properly considered that opinion and explained why he found it unpersuasive in compliance with 20 C.F.R. § 416.920c. The ALJ also sufficiently explained why he found persuasive the prior administrative medical findings of the reviewing state-agency physicians. Those findings constitute substantial evidence supporting the assessed RFC.

## CONCLUSION

For all the foregoing reasons, I find that the ALJ's assessment of the intensity, persistence, and limiting effects of Tremper's alleged EDS symptoms was not patently wrong; Tremper has not demonstrated that the ALJ committed reversible error in evaluating the medical opinions of her primary care physician assistant or the prior administrative medical findings of the reviewing state-agency physicians; and substantial evidence supports the ALJ's

decision. I therefore **AFFIRM** the Commissioner's decision. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 1st day of March, 2023.

_____
STEPHEN C. DRIES
United States Magistrate Judge